MARK E. MUSOLF, Secretary Department of Revenue
You have submitted a series of eight questions relating to the existing regulation of business transactions between wholesalers and *Page 259 
retailers of intoxicating liquor in Wisconsin. A wholesaler is one who holds a permit from the Secretary of Revenue to sell intoxicating liquor to retailers and to other wholesalers, sec. 176.05 (1a), Stats. A retailer is one who holds a "Class A" or a "Class B" license from a local government authority to purchase liquor from wholesale permittees for resale, sec. 176.05, Stats. Retail licensees are required to purchase liquor only from Wisconsin wholesalers, sec. 176.03, Stats.
Although the questions you have submitted involve several separate provisions within ch. 176, the focus of your inquiry appears to be upon sec. 176.05 (la)(b), Stats. That provision requires each wholesaler to provide to the Department of Revenue a franchise sales area statement indicating the brands of liquor that the wholesaler intends to sell and the area within which each brand will be sold. This subsection imposes no restraint upon the business dealings of the wholesaler. Every wholesaler is free to do business throughout the entire state or within any geographic portion. Nothing in this statute suggests that any wholesaler is to enjoy an exclusive right to distribute any liquor product within any trade area. Nothing prevents a wholesaler from filing a revised franchise statement as frequently as necessary. The Department of Revenue is not authorized to review or to reject a statement that is filed. Section 176.05 (1a)(b), Stats., requires only that each wholesaler provide to the Department of Revenue timely notice of its planned business operations.
Section 176.05 (la)(b), Stats., is part of the comprehensive framework of ch. 176 intended to effect uniform statewide regulation of liquor sales. The fact that the wholesale liquor industry is subject to substantial government regulation does not mean, however, that competition need be eliminated within this industry. In my interpretation of sec. 176.05 (1a)(b), Stats., I am cognizant of the Legislature's recent amendment of the state antitrust law which provides:
 It is the intent of the legislature to make competition the fundamental economic policy of this state and, to that end, state regulatory agencies shall regard the public interest as requiring the preservation and promotion of the maximum level of competition in any regulated industry consistent with the other public interest goals established by the legislature.
Sec. 133.01, Stats. *Page 260 
I understand the purpose of ch. 176 to be the protection of the general public. I do not understand ch. 176 to be intended to protect any segment of the liquor industry from the healthy stimulus of competition.
You have framed your inquiry using the following hypothetical situation:
 A wholesaler operating from a place of business within County A has filed with the Department of Revenue a franchise statement pursuant to sec. 176.05 (1a)(b), Stats., indicating that it intends to sell liquor brand X only within County A and also intends to sell liquor brand Y within all seventy-two counties of the state. The hypothetical buyer is the holder of a retail liquor license for a place of business located outside County A.
 1. May the wholesaler sell liquor brand X to the retailer who will pick the merchandise up at the wholesaler's place of business for resale at the retail establishment outside County A?
The wholesaler has indicated to the Department of Revenue that it will sell brand X only within County A. I believe that it is clear with respect to the above factual setting that the "sale" takes place at the wholesaler's place of business and thus poses no illegality with respect to the franchise statement filed. Section 176.01 (4), Stats., defines "sale" as any transaction by which liquor is obtained. It is clear that the above transaction is a "sale" which is completed at the point that the retailer takes possession of the merchandise. The fact that the retailer plans to take the purchased liquor outside the wholesaler's sales area is a matter which is entirely subsequent to and separate from the sales transaction. The transaction described above is consistent with the franchise statement filed by the wholesaler and suggests no violation of sec. 176.05 (1a)(b), Stats.
I note that my view of this matter is consistent with an early opinion of the Attorney General wherein it was stated that a "sale" by a liquor wholesaler takes place when and where the merchandise is separated *Page 261 
from the general stock of the wholesaler and given to the buyer's agent or carrier. 1 Op. Att'y Gen. 530 (1912).
 2. May the wholesaler deliver an order of brand X liquor to a public warehouse holding a permit pursuant to sec. 176.05 (1d), Stats., within County A with the understanding that the merchandise will be picked up later by the retail licensee?
This situation again is clearly one of a sale taking place within County A. The arrangement is one by which liquor is obtained by the retailer within County A. The wholesaler's part in the transaction is complete upon delivery and the "sale," within the meaning of sec. 176.01 (4), Stats., occurs within the area described in the wholesaler's franchise statement. Alternatively, under the Uniform Commercial Code, a "sale" takes place at the passing of title, sec. 402.106 (1), Stats. The passing of title is further defined to occur when the seller completes its performance as to delivery, sec. 402.401 (2), Stats. The wholesaler's performance is complete upon delivery to the warehouse and thus the sale takes place at that point within County A. The transaction, therefore, poses no conflict with the franchise statement which had been filed by the wholesaler pursuant to sec. 176.05 (1a)(b), Stats.
It should be noted that the hypothetical wholesaler may be required to hold a second permit from the Secretary of Revenue in order to undertake the transaction described above. A wholesaler must hold a permit pursuant to sec. 176.70, Stats., to engage in solicitation of orders for future delivery. For purpose of this inquiry it is presumed that the wholesaler holds such a permit together with the basic permit required by sec. 176.05 (1a), Stats.
 3. May the wholesaler ship an order of brand X liquor by common carrier to the retailer's place of business outside County A?
In my view, the statement filed by the wholesaler pursuant to sec. 176.05 (1a)(b), Stats., does not necessarily prohibit the transaction described in question 3. The definition of "sale" set out at sec. *Page 262 
176.01 (4), Stats., is very broad and does not offer clear guidance in this specific situation. AS discussed above, the Uniform Commercial Code defines the "sale" as occurring at the point that title passes from seller to buyer, sec. 402.106 (1), Stats. Moreover, the parties may agree between themselves as to when title passes, sec. 402.401 (2), Stats. The parties thus may agree that the merchandise becomes the property of the buyer at shipment in which case the above transaction would pose no conflict with the franchise statement filed by the wholesaler. On the other hand, if there exists no explicit agreement as to the passing of title and the sales contract obligates the seller to provide for delivery, title would then pass at delivery to the buyer and would then be a sale taking place outside of County A in violation of the applicable franchise statement, sec. 402.40 (2)(b), Stats.
 4. May a salesperson employed by the wholesaler solicit sales of brand X outside County A?
Chapter 176 expressly distinguishes and excludes solicitation of orders from the otherwise broad definition of "sale," sec. 176.01 (4), Stats. The solicitation of orders for brand X outside County A would not be a "sale" and would pose no conflict with the franchise statement filed by the wholesaler.
 5. The wholesaler intends to sell and deliver identical orders of brand Y to two retailers, one seventy-five miles away and another 250 miles away. Must the amount charged to each retailer be identical or may the total charge to the distant customer reflect the higher cost of the delivery service?
Section 176.17 (5a), Stats., requires that the "prices charged" by a wholesaler be the same for all retailers purchasing in similar quantities. You indicate that it has been the practice of Wisconsin wholesalers to provide delivery service and to charge the same total amount to each retailer regardless of the distance between the wholesaler's place of business and that of the retail customer. Section 176.17 (5a), Stats., does not require that a wholesaler deliver the liquor products that are sold nor does any other provision of ch. 176 mandate delivery. It may well be that such delivery service is the custom among Wisconsin liquor wholesalers but, as illustrated by *Page 263 
questions 1 and 3 above, it is not an essential part of the sales transaction. In my view, the liquor sold may properly be regarded as something separate from the service of delivering the liquor.
The obvious purpose of sec. 176.17 (5a), Stats., is to protect retailers from discriminatory pricing by a wholesaler. An early interpretation of what is now sec. 100.22, Stats., a statute which prohibits price discrimination in the purchase of dairy products, recognized that the actual cost of delivery to a particular customer is a proper justification for a price differential. 16 Op. Att'y Gen. 68 (1927). Moreover, there exists a criminal penalty for the violation of sec. 176.17 (5a), Stats., and thus a narrow construction of its prohibition is proper.
In consideration of the foregoing, it is my opinion that the wholesaler in the above illustration may charge a different amount to the two customers where that differential can be justified by actual transportation costs. I should also add that if a wholesaler chooses to charge for transportation service, the same method of calculating that charge should be applied with respect to each retailer who receives that service. To provide delivery service without charge to some but not all retailers would obviously be discriminatory and could well constitute a violation of sec. 176.17 (5a), Stats.
 6. May the price for a given quantity of liquor picked up by the buyer at the wholesaler's place of business be lower than the price for the same quantity of liquor where the wholesaler provides delivery service?
For the reasons stated in my response to question 5, I believe that sec. 176.17 (5a), Stats., permits a wholesaler to establish a "dock price" provided that price is available to all retailers who purchase similar quantities and provided that it is based upon transportation costs saved.
 7. Does the wholesaler violate sec. 176.17 (2), Stats., if it charges the same total amount for selling and delivering identical orders to the two retailers described in question 5 ?
Section 176.17 (2), Stats., requires that no "manufacturer, rectifier or wholesaler shall furnish, give, or lend any . . . thing of value, *Page 264 
directly or indirectly" to a Class B retailer, one which sells liquor for consumption on the retail premises. For purpose of this inquiry, I presume that the two retailers, seventy-five and 250 miles distant, both hold Class B licenses. You are asking if the wholesaler improperly furnishes something of value to the distant retailer by not charging for the differential transportation cost. The question actually posed is whether the Legislature, by enacting sec. 176.17 (2), Stats., so clearly intended to prohibit the practice of providing delivery without charge that the wholesaler should be subjected to criminal penalty for providing that service.
Section 176.17, Stats., is part of the "tied house" law which is intended to prevent manufacturers, rectifiers and wholesalers of liquor from gaining control of retailers. Section 176.17 (2), Stats., prohibits wholesalers from providing "any money or other thing of value" to a Class B retailer. On its face that broad restriction appears to prohibit the entire business of selling liquor at wholesale to Class B retailers. It is therefore necessary, I believe, to interpret the scope of sec. 176.17 (2), Stats., in light of the overall purpose of the "tied house" law. Moreover, my predecessors have also found it appropriate in two instances to look beyond the literal language of this subsection in order to render a proper interpretation. 16 Op. Att'y Gen. 277 (1927);23 Op. Att'y Gen. 191, 214 (1934). See also NationalDistributing Company, Inc. v. U.S. Treasury Department, 626 F.2d 997
(D.C. Dir. 1980), which presents a comprehensive review of the legislative history of 27 U.S.C. § 205, the federal analogue to the Wisconsin "tied house" law.
It is my understanding that delivery without charge has long been the common practice among wholesalers of intoxicating liquor in Wisconsin. It is also my understanding that the Department of Revenue has been aware of this practice and has never regarded it to be a violation of sec. 176.17 (2), Stats. A long-standing interpretation of law by the agency charged with enforcement implies legislative acquiescence in that interpretation,Department of Revenue v. Exxon Corp., 90 Wis.2d 700,281 N.W.2d 94 (1979); aff'd. 447 U.S. 207 (1980).
I do not believe that the business practice in question, particularly when the "free" delivery is provided to all retailers served by the *Page 265 
wholesaler, carries with it a danger of coercion or control. Nothing in the factual setting you have described implies that the wholesaler is obligated to continue a policy of "free" transportation beyond the sale in question. More importantly, nothing in your inquiry suggests that the retailer must continue buying or ever buy again from the wholesaler who does not charge for transportation service. Presumably, a policy of "free" transportation would be an inducement to business with a particular wholesaler just as lower prices and prompt service would also be inducements. So long as a policy of "free" transportation service does not entail an obligation on the part of the retailer to make future purchases, it is simply a term of a particular sales transaction and nothing more. The Legislature, in my view, did not intend by the enactment of sec. 176.17 (2), Stats., to make criminal the business practice of providing, without charge, delivery to Class B retailers. As I have indicated above, the wholesaler may differentiate between customers based upon actual transportation costs. The wholesaler may also choose, however, to absorb the cost of delivery within the overhead of its business operation and in doing so, does not violate sec. 176.17(2), Stats.
 8. Would a wholesaler found to be in violation of sec. 176.05 (1a)(b), 176.17 (2)or 176.17 (5a), Stats., also be in violation of sec. 939.31, Stats.?
A wholesaler which violates any of the above three provisions of ch. 176 would be subject to a fine or imprisonment or both as provided in sec. 176.41, Stats. A violation of any of the three subsections is therefore a crime within the meaning of sec.939.12, Stats. Section 939.31, Stats., provides that one who agrees with another to commit a crime may be punished for the agreement if one or more of the parties does some act in furtherance of that plan. A wholesaler who intentionally agrees with another party for the purpose of violating secs. 176.05, 176.17 (2), or 176.17 (5a), Stats., is in violation of sec.939.31, Stats., at the point that one of the parties does some act in furtherance of the agreement. Moreover, it should be noted that one who is involved in a violation of any of the three foregoing statutes may well face liability for that violation as a party to the crime within the meaning of sec. 939.05, Stats.
BCL:DTF *Page 266